1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAOHEUANG KHOUNESAVATDY, | ) | 1:06-cv-001786-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| | ) | PLAINTIFF'S SOCIAL SECURITY |
| v. | ) | COMPLAINT (DOC. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | ORDER DIRECTING THE ENTRY OF |
| Security, | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| Defendant. | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | DAOHEUANG KHOUNESAVATDY |
| | ) | |

17  Plaintiff is proceeding in forma pauperis and with counsel

18 against the Commissioner of Social Security. Pursuant to 42

19 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review

20 of a final decision of the Commissioner denying an application

21 for Supplemental Security Income (SSI) benefits under Title XVI

22 of the Social Security Act (the Act). Pursuant to 28 U.S.C. §

23 636(c)(1), the parties have consented to the jurisdiction of the

24 Magistrate Judge to conduct all proceedings in this matter,

25 including ordering the entry of final judgment.[1] The matter is

26 currently before the Court on the parties' briefs, which have

27

28 _____
[1] The Honorable Anthony W. Ishii ordered the case assigned to the undersigned Magistrate Judge on February 12, 2007.

1

been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

I. <u>Procedural History</u>

On September 17, 2003, Plaintiff applied for SSI benefits, alleging disability since January 1, 1984, due to back problems. (A.R. 13, 71-74.) After Plaintiff's claim was denied initially and on reconsideration, Plaintiff appeared with counsel and testified at a hearing before the Honorable Sean Tehan, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), on February 7, 2006. (A.R. 13, 214-48, 26-28.) On June 26, 2006, the ALJ denied Plaintiff's application for benefits. (<u>Id.</u> at 13-18.) After the Appeals Council denied Plaintiff's request for review, Plaintiff filed the complaint in this action on December 8, 2006. (<u>Id.</u> at 5-7.) Briefing commenced on July 30, 2007; Defendant filed opposition, and Plaintiff filed a reply brief on September 10, 2007. A supplemental brief, addressing a contention that Plaintiff raised in the reply brief, was filed by Defendant at the direction of the Court on February 28, 2008.

II. <u>Scope and Standard of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10

1 (9th Cir. 1975). It is "such relevant evidence as a reasonable

2 mind might accept as adequate to support a conclusion."

3 Richardson, 402 U.S. at 401. The Court must consider the record

4 as a whole, weighing both the evidence that supports and the

5 evidence that detracts from the Commissioner's conclusion; it may

6 not simply isolate a portion of evidence that supports the

7 decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

8 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  It

9 is immaterial that the evidence would support a finding contrary

10 to that reached by the Commissioner; the determination of the

11 Commissioner as to a factual matter will stand if supported by

12 substantial evidence because it is the Commissioner's job, and

13 not the Court's, to resolve conflicts in the evidence. Sorenson

14 v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

15     In weighing the evidence and making findings, the

16 Commissioner must apply the proper legal standards. Burkhart v.

17 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

18 review the whole record and uphold the Commissioner's

19 determination that the claimant is not disabled if the

20 Commissioner applied the proper legal standards, and if the

21 Commissioner's findings are supported by substantial evidence.

22 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

23 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

24 the Court concludes that the ALJ did not use the proper legal

25 standard, the matter will be remanded to permit application of

26 the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

27 Cir. 1987).

28 ////////

3

III. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3)

whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in
Appendix I of the regulations; 4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work; and 5) whether on the basis of the
applicant's age, education, work experience, and residual
functional capacity, the applicant can perform any other gainful
and substantial work within the economy. See 20 C.F.R. § 416.920.[2]

Here, the ALJ found that Plaintiff, who was fifty-two at the
time of the decision and born in Laos, had degenerative disc
disease of L5-S1 that was severe, but he had no impairment or
combination thereof that met or equaled a listed impairment;
Plaintiff had the residual functional capacity (RFC) to lift and
carry twenty-five pounds frequently and fifty pounds
occasionally, stand and walk and sit six hours in an eight-hour
work day, but to stoop, crouch, or crawl only occasionally.
Plaintiff was able to perform his past relevant work of cook's
helper as he performed it and as it was generally performed,
which was medium and unskilled work; he could also perform other
work, specifically that of a hand packager and production helper.
(A.R. 71, 15-18, 221.)

IV. Plaintiff's Subjective Complaints

The ALJ addressed Plaintiff's subjective complaints in the
decision, noting Plaintiff's testimony that he could not work due
to intermittent low back pain and weakness and numbness of his

---

[2] All references to the Code of Federal Regulations are to the 2006 version unless otherwise stated.

legs. He was prescribed a cane but was unsure whether he could stand and walk without his cane, and he had a back brace. Plaintiff was unable to lift or carry any amount of weight or stand and walk continuously more than four to five minutes or about one block with a cane; he stayed home and watched TV, but he got out every day. Plaintiff could not remember why he had been disabled since 1984. He took Ibuprofen for his pain but had not received any other medical treatment for his back pain; he had a California driver's license and a good driver's record, but he stopped driving in 2000. (A.R. 16, 223, 232-39.)

The ALJ concluded that although Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, duration and limiting effects of the symptoms were not entirely credible. (A.R. 17.) The ALJ's reasons included the absence of clinical or objective evidence for the claimed limitations; Plaintiff's use of a cane when there was an expert opinion that an assistive device was unnecessary; conservative treatment and an absence of physical therapy, injections, chiropractic care, medical massage, acupuncture, or a referral by Plaintiff's physicians for an orthopedic or neurological examination; and inconsistencies in Plaintiff's statements. (A.R. 17.)

Plaintiff argues that applying Soc. Sec. Ruling 96-7p, the Court should conclude that Plaintiff was credible because there was evidence that Plaintiff had limited daily activities, took medication, had been treated by physicians for his impairment, and his treating physician limited him to less than sedentary

work. (Brief p. 8.)

However, the question for this Court is not whether Plaintiff would initially have been found credible under the pertinent standards, but rather whether the ALJ applied correct legal standards and stated clear and convincing reasons, supported by substantial evidence, for his conclusion.

The court in <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007), summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. See <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.' " <u>Morgan</u>, 169 F.3d at 599 (quoting <u>Lester</u>, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." <u>Id.</u> Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." <u>Id.</u>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. See S.S.R. 02-1p (Cum. Ed.2002), available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R. 96-7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483-01 (July 2, 1996). An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. See 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); see <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and

"unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." <u>Fair</u>, 885 F.2d at 603; see also <u>Thomas</u>, 278 F.3d at 958-59.

The factors to be considered in weighing credibility are set forth in the regulations and pertinent Social Security rulings. They include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the symptoms; treatment, other than medication, the person receives or has received for relief of the symptoms; any measures other than treatment the claimant uses or has used to relieve the symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; S.S.R. 96-7p.

With respect to the course of analysis directed by the regulations, the ALJ is first obligated to consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once it is determined that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the capacity for work. §§ 404.1529(b), (c); 416.929(b), (c). The ALJ will consider all available evidence. To the extent that the claimant's symptoms can be reasonably accepted as consistent with the

objective medical evidence and other evidence, the symptoms will be determined to diminish the claimant's capacity for basic work activities. §§ 404.1529(c)(4); 416.929(c)(4). A claimant's statements will not be rejected solely because unsubstantiated by the available objective medical evidence. §§ 404.1529(c)(2); 416.929(c)(2).

Further, the pertinent Social Security Ruling provides in pertinent part that an ALJ has an obligation to articulate the reasons supporting the analysis:

> ...When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

S.S.R. 96-7p at 4.

Here, a review of the ALJ's reasoning and the medical record shows that the ALJ stated clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's allegation of disabling functional limitations.

The ALJ's reliance on the absence of any x-ray or clinical evidence of nerve impingement or spinal stenosis was supported by the record. An x-ray of the lumbar spine taken January 6, 2004, revealed degenerative changes, primarily at L5-S1, but the findings were normal or mild: normal bony alignment, vertebral bodies normal in height, mild disc space narrowing at L5-S1 with early anterior osteophyte formation, early osteophyte formation at L3-4, and intact pedicles. (A.R. 17, 142.) Five views of the lumbar spine taken in August 2005 reflected no compression fractures but spondylolysis at the L5-S1 level, no criteria for spondylolisthesis, and moderate, multi-level spondylosis with anterior hypertrophic spurs. (A.R. 196.)

Consulting, examining physician Tomas B. Rios, M.D. performed a comprehensive internal medicine examination of Plaintiff January 6, 2004. Plaintiff complained of back pain and discomfort associated with a past gunshot wound to the right trapezius area; Plaintiff reported taking aspirin and Motrin for the pain. Dr. Rios found essentially preserved motor strength, no limitation in range of motion to the elbow or shoulder joints, and no marked deformity of the biceps and upper trapezius area in connection with the past gunshot wound. There was full lumbar flexion/extension mobility; although Plaintiff reported some tenderness on palpation of the mid and lower lumbar spine, there was no associated spasm or root irritation; motor strength was 5/5 in both upper and lower extremities with symmetrical muscle bulk and normal muscle tone; grip strength bilaterally was adequate and strong; and there were no focal findings involving the upper or lower extremities. The diagnosis was chronic back

pain with difficulty with frequent bending, stooping, crouching, or crawling; status post gunshot wound injury without effect on Plaintiff's motor strength, joints, or function. (A.R. 138-42.)

As the ALJ noted, other medical records from Sequoia Family Medical Clinic reflected normal findings and an absence of abnormalities as documented from July 2001 through December 2005. Plaintiff's doctors treated him with Ibuprofen; Plaintiff reported intermittent or flaring back pain and tenderness, but generally there were no spasms or focal neurological deficits, and sometimes there was not even tenderness; in 2004 and 2005, Plaintiff sometimes had no complaints, was present only to get paperwork, or reported that Ibuprofen helped the pain. (A.R. 17, 205, 153-66, 187-94, 202-03.)

Further, other medical evidence conflicted with Plaintiff's allegation of severe limitation. (A.R. 17.) The Court notes that in addition to the opinion of Dr. Rios, the record reflects the opinions of state agency medical consultants, Drs. Peery and Dr. Mitts, to the effect that Plaintiff could perform medium work.[3] Dr. Peery opined on February 24, 2004, that Plaintiff's degenerative joint disease of the lumbar spine and chronic back pain permitted medium exertion with only occasional stooping, crouching, and crawling secondary to chronic back pain; Dr. Mitts affirmed Dr. Peery's assessment on August 13, 2004. (A.R. 145-152.)

---

[3] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

1   The ALJ's consideration of the lack of objective medical

2 evidence or record support for the disabling extent of

3 Plaintiff's subjective complaints was appropriate. Although the

4 inconsistency of objective findings with subjective claims may

5 not be the sole reason for rejecting subjective complaints of

6 pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is

7 one factor which may be considered with others, Moisa v.

8 Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v.

9 Commissioner 169 F.3d 595, 600 (9th Cir. 1999). Under the

10 circumstances of the present case, it was clear and convincing.

11   The ALJ's reliance on the conservative nature of Plaintiff's

12 treatment was supported by the record. Plaintiff testified that

13 the only treatment he had received for his back was medication,

14 massage, and a back brace that his son bought for him; he took

15 Ibuprofen three times a day without side effects, and he felt

16 better when he took the medication. (A.R. 234-36.) The ALJ

17 expressly noted that the Ibuprofen was a medication that was

18 inconsistent with a chronic and disabling pain disorder and was

19 consistent with only mild to moderate pain; further, Plaintiff's

20 physician had not referred him for an orthopedic or neurological

21 examination. (A.R. 17.)

22   An ALJ may rely on the conservative nature of treatment or a

23 lack of treatment in rejecting a claimant's subjective complaint

24 of pain. Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995).

25 Here, although Plaintiff testified that he had received

26 unspecified massages from his doctor from time to time (A.R.

27 232), the record supports the ALJ's conclusion that in the main

28 Plaintiff received conservative treatment in the form of

medication, with Ibuprofen for his back pain and Ambien for his insomnia. Plaintiff does not identify any evidence that the brace was medically necessary or prescribed. Further, Plaintiff does not cite to any evidence that his physician had referred him for an orthopedic or neurological examination. Here, the conservative nature of the treatment is inconsistent with a claim of disabling pain and warrants a strong inference that Plaintiff was not truly motivated to seek additional treatment and/or that Plaintiff's complaints of pain were exaggerated.

The ALJ relied on various inconsistencies that are reflected in the record. Plaintiff testified that he had a back brace, but Dr. Rios did not observe that Plaintiff wore a back brace. (A.R. 17, 138-41.) Plaintiff testified that his pain was disabling but occurred only intermittently; yet Dr. Shubhaker, Plaintiff's treating physician, opined that Plaintiff's back pain impairment was unlikely to produce good and bad days. (A.R. 17, 239, 201.)

The ALJ stated that although Plaintiff alleged that his legs were weak and numb, he denied any radiation of pain into the lower extremities in January 2004 (apparently a reference to the examination by Dr. Rios). Dr. Rios noted that sensation and motor strength were normal. (A.R. 17, 140-41, 138.)

Inconsistent statements are matters generally considered in evaluating credibility and are properly factored in evaluating the credibility of a claimant with respect to subjective complaints. In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and his conduct or work record, or internal contradictions in the

1  testimony; and testimony from physicians and third parties

2  concerning the nature, severity, and effect of the symptoms of

3  which the claimant complains. Moisa v. Barnhart, 367 F.3d 882,

4  885 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th

5  Cir. 2002). The ALJ may consider whether the Plaintiff's

6  testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087,

7  1090 (9th Cir. 1999).

8      Here, the foregoing inconsistencies were supported by

9  substantial evidence in the record and were clear and convincing

10  in force. They warranted strong inferences that Plaintiff's

11  claims were exaggerated when compared with the medical evidence,

12  and that because they were internally inconsistent, they were

13  thus less likely to be true.

14      The ALJ relied on several specifically described

15  inconsistencies that were not necessarily of the same probative

16  force as the preceding reasons. The ALJ noted that Plaintiff

17  walked with a cane but "incredibly claimed" he did not know

18  whether he could walk without a cane. (A.R. 17.) When asked how

19  long he could stand without his cane, Plaintiff testified that he

20  did not think he could do that because he never did without it.

21  (A.R. 237.) In view of the fact that the record contains evidence

22  that one of Plaintiff's doctors did prescribe a cane,[4] it would

23

24      [4] Plaintiff testified that his old doctor, Dr. Suka, who was no longer in
the area, had prescribed the cane. (A.R. 235.) Although Plaintiff stated that
25  he used a cane, Dr. Rios opined in January 2004 that a cane was unnecessary
because Plaintiff's overall balance, strength, and equilibrium were intact;
Romberg's testing showed no pathologic sway, and Plaintiff was able to execute
26  a normal tandem walk and heel-toe walk. (A.R. 139-40.) A faxed report from
July 2001 from Sequoia Family Medical Center reflected "RX: DCANE," and was
27  submitted after the hearing apparently in response to the ALJ's questions
concerning the existence of a prescription for a cane. (A.R. 204-05, 4, 234-
28  35.) It thus appears that the ALJ's finding that there was not medical
evidence to support the use of a cane was overly broad. (A.R. 17.)

have been medically reasonable for Plaintiff to rely on a cane
and not to attempt to ambulate without it.

The ALJ stated that Plaintiff testified that he stopped
driving in 2000, but he also stated that he had a good driving
record. (A.R. 17.) Plaintiff testified that he had stopped
driving a long time before, and he could not remember but stated
it was some time back in 2000; he had a clean record, so his
license was just renewed. (A.R. 240-41.) A good driving record
and cessation of driving are not necessarily inconsistent.

The ALJ noted that Plaintiff testified that he was required
to look for work by welfare, but his testimony that he looked for
work was inconsistent with his allegations of disability. (A.R.
17.) Plaintiff testified that his family had received welfare,
but he looked for work between 1985 and 1996; he was required by
an unnamed department to do so, but he could not find a job.
(A.R. 228-30.) One inference to be drawn was that when actually
required or motivated to work, Plaintiff was able to do so.
However, in view of the fact that Plaintiff was required to look
for a job in order to obtain support for himself and his family,
the inference is not particularly strong that merely because
Plaintiff looked for work, he was independently capable of
working.

However, as previously noted, the ALJ stated several other
clear and convincing reasons, supported by substantial evidence,
for his findings. Although there might have been factors
supporting Plaintiff's credibility, and even though several
factors relied upon by the ALJ were not fully supported by the
record, the ALJ nevertheless articulated clear and convincing

reasons, supported by substantial evidence, for discrediting
Plaintiff's subjective complaints of pain. Cf. Batson v.
Commissioner of the Social Security Administration, 359 F.3d
1190, 1196 (9th Cir. 2004). The ALJ's reasons were properly
supported by the record and sufficiently specific to allow this
Court to conclude that the ALJ rejected the claimant's testimony
on permissible grounds and did not arbitrarily discredit
Plaintiff's testimony.

   V. The Treating Physician's Opinion

   Plaintiff argues that the opinion of Dr. Shubhakar,
Plaintiff's treating physician, was entitled to controlling
weight and should have been adopted. Plaintiff did not mount any
factual argument in his opening brief, but in the reply brief he
argues that there was no substantial evidence to contradict the
doctor's opinion; Dr. Rios's opinion omitted consideration of
both an x-ray in January 2004, which showed degenerative changes
of the back, and an x-ray of August 2005.

   The standards for evaluating treating source's opinions are
as follows:

> By rule, the Social Security Administration favors
> the opinion of a treating physician over
> non-treating physicians. See 20 C.F.R. § 404.1527.
> If a treating physician's opinion is
> "well-supported by medically acceptable clinical
> and laboratory diagnostic techniques and is not
> inconsistent with the other substantial evidence
> in [the] case record, [it will be given]
> controlling weight." Id. § 404.1527(d)(2). If a
> treating physician's opinion is not given
> "controlling weight" because it is not
> "well-supported" or because it is inconsistent
> with other substantial evidence in the record, the
> Administration considers specified factors in
> determining the weight it will be given. Those
> factors include the "[l]ength of the treatment
> relationship and the frequency of examination" by

> the treating physician; and the "nature and extent
> of the treatment relationship" between the patient
> and the treating physician. Id. §
> 404.1527(d)(2)(i)-(ii). Generally, the opinions of
> examining physicians are afforded more weight than
> those of non-examining physicians, and the
> opinions of examining non-treating physicians are
> afforded less weight than those of treating
> physicians. Id. § 404.1527(d)(1)-(2). Additional
> factors relevant to evaluating any medical
> opinion, not limited to the opinion of the
> treating physician, include the amount of relevant
> evidence that supports the opinion and the quality
> of the explanation provided; the consistency of
> the medical opinion with the record as a whole;
> the specialty of the physician providing the
> opinion; and "[o]ther factors" such as the degree
> of understanding a physician has of the
> Administration's "disability programs and their
> evidentiary requirements" and the degree of his or
> her familiarity with other information in the case
> record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

Here, Dr. Shubhakar completed a check-the-box, fill-in-the-blanks residual functional capacity questionnaire on November 22, 2005, in which he stated that Plaintiff had visited him monthly beginning in late April 2005, but Plaintiff's first visit to the clinic (Sequoia Family Medical Center) was in 2000; Plaintiff's visits were approximately 30 plus, but it is unclear from this document whether such visits were to the doctor or merely to the clinic. (A.R. 197, 197-201.) The diagnosis was low back pain, degenerative joint disease (spinal), hypercholesterolemia, and impaired vision, with a fair prognosis. Plaintiff's symptoms were pain in the lower spinal area based on clinical findings of degenerative disc and spondylolysis in the L5-S1 area, for which Plaintiff took Motrin and Trazadone. Plaintiff's impairments lasted or could be expected to last at least twelve months, and insomnia affected Plaintiff's physical condition. Plaintiff's

1  experience of pain or other symptoms was severe enough to

2  interfere constantly with the attention and concentration needed

3  to perform even simple work tasks. Plaintiff could concentrate

4  for only five minutes and was incapable of even low-stress jobs

5  because of low back pain and weakness in his legs; Plaintiff

6  could at most walk less than one block, sit or stand five minutes

7  at one time, and sit, stand, and walk less than two hours in an

8  eight-hour work day. With prolonged sitting, Plaintiff's legs

9  needed to be elevated ten to fifteen minutes; Plaintiff could

10  rarely look down (sustained flexion of the neck), turn the head

11  right or left, look up, hold his head in static position, twist,

12  stoop, crouch, climb ladders, or climb stairs; Plaintiff was

13  significantly limited in repetitive reaching, handling or

14  fingering. Plaintiff's impairments were not likely to produce

15  good days and bad days. Plaintiff's impaired vision and impaired

16  hearing would also affect Plaintiff's ability to work at a

17  regular job on a sustained basis. (Id.)

18       The ALJ here placed great weight on the opinions of the

19  state agency physicians and Dr. Rios. With respect to the

20  treating physician's opinion, the ALJ stated:

21       Dr. Shubhaker's assessment is internally inconsistent
         with the clinical and x-ray findings and the medical
22       treatment. In particular, in June 2004, examination
         showed the claimant's back was "nontender." He had
23       "no neurological deficits" (Exhibit 4F, p. 1).
         Therefore, Dr. Shubhaker's opinion is given
24       little evidentiary weight.

25  (A.R. 17.)

26       Viewing not only these focused sentences but also the

27  entirety of the ALJ's opinion, the Court concludes that it is

28  clear that the ALJ considered the totality of the medical

evidence of record and interpreted it as generally reflecting mild or normal objective findings and treatment for mild or moderate pain. (A.R. 17.) Plaintiff does not assert that the ALJ failed to consider any portion of the record. The ALJ's opinion is reasonably interpreted as reflecting a conclusion that the treating physician's opinion was not well-supported by the weight of the objective medical evidence.

Further, the ALJ considered the nature of the treatment history, including the lack of referral for an orthopedic or neurological examination, physical therapy, or any other basic treatment mode besides medication; the ALJ considered the amount of relevant evidence that supported the opinion and the consistency of the medical opinion with the record as a whole. It therefore appears that the ALJ was proceeding pursuant to correct legal principles in evaluating the treating doctor's opinion.

With respect to the legal sufficiency of the ALJ's reasoning, the governing principles have been recently restated:

> The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th Cir.1995) (as amended).] Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. (internal quotation marks omitted). Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. at 830, quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Magallanes [v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).] The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.1

1
2

> Reddick v. Chater, 157 F.3d 715, 725 (9th
> Cir.1998); accord Thomas, 278 F.3d at 957;
> Lester, 81 F.3d at 830-31.

3 Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

4     Further, it is established that it is appropriate for an ALJ
5 to consider the absence of supporting findings, and the
6 inconsistency of conclusions with the physician's own findings,
7 in rejecting a physician's opinion. Johnson v. Shalala, 60 F.3d
8 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016,
9 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th
10 Cir. 1989). A conclusional opinion that is unsubstantiated by
11 relevant medical documentation may be rejected. See Johnson v.
12 Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995).

13     Here, the record supports the ALJ's reasoning. Dr. Shubhakar
14 assigned the most severe of functional limitations to Plaintiff
15 and even opined that Plaintiff could rarely look down, turn his
16 head, look up, or hold his head in a static position. However,
17 the Court is aware of no findings in the record that would
18 support such limitations, and Plaintiff has not pointed out any
19 such evidence. To the contrary, as the ALJ noted, in June 2004,
20 Plaintiff had a "nontender" back, the examination showed no
21 neurological deficits, and Plaintiff was in no acute distress.
22 (A.R. 17, 153.)

23     As the ALJ more generally noted, x-ray results and clinical
24 findings were inconsistent with such limitations. The x-ray taken
25 in January 2004 did reveal some degenerative changes, but the
26 vertebral bodies were normal in height, and there was only mild
27 disc space narrowing at L5-S1. The later test taken in August
28 2005 reflected moderate, multi-level spondylosis with anterior

1  hypertrophic spurs.[5] There was no spondylolisthesis, or forward

2  displacement of one vertebra over another. <u>See</u>, <u>Dorland's</u>

3  <u>Illustrated Medical Dictionary</u> (28th ed. 1994) p. 1563. There was

4  a defect in the pars intra1articularis at the L5-S1 level

5  consistent with spondylolysis, or the dissolution of a vertebra.

6  <u>Id.</u> However, these findings are such that they reasonably could

7  be categorized as generally mild or moderate, and they were

8  reasonably interpreted by the other experts as inconsistent with

9  the severe functional limitations assessed.

10      Further, the record contained all the clinical findings of

11  Dr. Rios in January 2004, including full motor strength and range

12  of motion in the upper extremities and lumbar area, an absence of

13  spasm or signs of root irritation, and no focal findings.

14      The ALJ's reliance on the conservative treatment given to

15  Plaintiff by the treating physician (A.R. 17) was supported by

16  substantial evidence in the medical record, which reflected

17  relief of Plaintiff's pain with medication, including Ibuprofen.

18  (A.R. 160, 189.) The record also contained Plaintiff's testimony

19  revealing that the only treatment Plaintiff received was a back

20  brace, which was not shown to have been prescribed; a cane, which

21  Dr. Rios opined was unnecessary; and medication (Ibuprofen three

22  times a day). (A.R. 234-36). The completely disabling extent of

23  Plaintiff's condition, as reflected in Dr. Shubhakar's assessment

24  of Plaintiff's total disability, was inconsistent with the mild

25  level of treatment and a medical history in which Ibuprofen

26

27      [5] "Spondylosis" refers either to ankylosis of a vertebral joint, with ankylosis being immobility or

28  consolidation of a joint due to disease or other causes; or it is a general term referring to degenerative changes due to osteoarthritis. <u>Dorland's Illustrated Medical Dictionary</u> (28th ed. 1994) pp. 1564, 86.

1  relieved Plaintiff's pain.

2      Plaintiff argues that Dr. Rios's opinion was insufficient to
3  constitute substantial evidence to support the ALJ's conclusion
4  because Dr. Rios did not consider the x-rays of January 6, 2004
5  and August 2005. (A.R. 142, 196.)

6      The x-ray of January 6, 2004, was ordered by Dr. Rios; it
7  appears that dictation and typing of the report of the x-ray
8  occurred on January 9 and 11, 2004, respectively. (A.R. 142.) Dr.
9  Rios's examination report reflected that his examination of
10 Plaintiff occurred on January 6, 2004, but the report itself is
11 not separately dated on the signature page. Two sets of initials
12 ("TR:jd") below the signature line support an inference that
13 someone other than Dr. Rios transcribed his report (A.R. 138). It
14 is reasonable to assume that even though Dr. Rios did not
15 expressly refer to the x-ray results in his report, the x-rays
16 were obtained for his use and consideration, and further that he
17 would have not rendered an opinion that was inconsistent with the
18 x-ray results.

19     With respect to the later x-ray of August 2005, Plaintiff
20 appears to be arguing that because Dr. Rios's opinion pre-dated
21 that x-ray, the doctor's opinion was necessarily insubstantial in
22 force.

23     It is established that a more recent opinion may be entitled
24 to greater deference than an older opinion, as may an opinion
25 which describes or considers more significant medical events or
26 conditions. Orn v. Astrue, 495 F.3d 625, 633-34 (9th Cir. 2007).
27 One important factor in evaluating an expert opinion is the
28 extent to which an acceptable medical source is familiar with the

other information in the case record; an opinion should be based on the Plaintiff's condition as a whole. 20 C.F.R. §416.927(d)(6). For example, it has been held that the most recent opinion of a treating doctor, whose opinion was the only one describing the effects of significant medical events in the life of the claimant, was entitled to deference. Orn v. Astrue, 495 F.3d 625, 633-35 (9th Cir. 2007).

Here, although Dr. Rios examined Plaintiff before the later x-rays and before Dr. Shubhakar rendered his opinion, Dr. Rios performed a complete examination of Plaintiff and gathered extensive findings upon which to base his opinion, including an x-ray study. The later x-ray study was not necessarily inconsistent with the earlier one, although it is could be concluded that some additional development or degeneration in Plaintiff's condition was reflected in the second x-ray. However, the difference between the two x-rays was not analogous to the situation presented in Orn, where the treating doctors whose opinions were entitled to deference had unique longitudinal knowledge of the claimant or unique consideration of the claimant's recent hospitalization and more serious treatment needs. Here, the presence of the later x-ray in the record does not undercut the ALJ's reasoning concerning the treating doctor's opinion's inconsistency with the objective findings in the record, and it is not of a nature necessarily to undercut the validity of Dr. Rios's opinion.

Accordingly, the Court concludes that the ALJ stated specific and legitimate reasons, supported by substantial evidence, for placing little weight on the opinion of Dr.

Shubhakar.

VI. <u>Vocational Expert's Testimony</u>

The ALJ concluded that there was no medical evidence supporting the use of a cane, and he further noted that Plaintiff had agreed at the hearing through his attorney that the record was complete and ready to evaluate for a decision. (A.R. 17-18.) The ALJ found that Plaintiff was able to perform his past relevant work as he had actually performed it and as it was generally performed, relying on the testimony of a vocational expert (VE), who testified that one with Plaintiff's RFC for medium work with occasional, non-exertional postural limitations could perform Plaintiff's past work of a cook's helper, which was medium level, unskilled work. (A.R. 18, 243-47.)

The VE had testified that for one with the limitations assigned by Dr. Shubhakar, or with the basic limitations described by Plaintiff in his testimony, there would not be work available. (A.R. 235-38, 246-47.)

Plaintiff argues that the ALJ erred in not submitting to the VE Plaintiff's limitations as testified to by Plaintiff, or as opined by Dr. Shubhakar.

The Commissioner may carry his burden of showing ability to do other work by eliciting the testimony of a vocational expert (VE) in response to a hypothetical that sets out all the limitations and restrictions of the claimant that are supported by the record. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1044 (9th Cir. 1995). A hypothetical question posed to a VE must be based on medical assumptions supported by substantial evidence that reflects all the claimant's limitations. <u>Osenbrock v. Apfel</u>, 240

24

1  F.3d 1157, 1164-65 (9th Cir. 2001) (citing <u>Roberts v. Shalala</u>, 66

2  F.3d at 184)). An ALJ may accept or reject restrictions in a

3  hypothetical question that are not supported by substantial

4  evidence. <u>Osenbrock</u>, 240 F.3d 1157, 1164-65. Reliance on a

5  hypothetical that fails to include all accepted limitations is

6  insufficient to carry the agency's burden of proving ability to

7  engage in alternative work. <u>Andrews v. Shalala</u>, 53 F.3d 1035,

8  1044 (9th Cir. 1995) (remanding case to the agency to determine

9  vocational ability based on a hypothetical that accurately

10 reflected the RFC). Although a hypothetical should include

11 subjective complaints, it need not include complaints which were

12 rejected with a statement of reasons supported in the record.

13 <u>Light v. Social Security Administration</u>, 119 F.3d 789, 793 (9th

14 Cir. 1997).

15     The Court has previously analyzed in detail the sufficiency

16 of the ALJ's reasoning for putting little weight on Dr.

17 Shubhakar's assessment and for rejecting Plaintiff's claimed

18 subjective limitations, and it has found the ALJ's reasoning

19 legally sufficient and supported by substantial evidence. Thus,

20 the limitations were appropriately rejected by the ALJ and did

21 not need to be propounded to the expert.

22     Further, Plaintiff argues that the ALJ erred in failing to

23 determine that Plaintiff needed to use a cane. This argument is

24 made in reliance on evidence submitted after the hearing that a

25 cane had been prescribed to Plaintiff in 2001, and that Plaintiff

26 had appeared for medical appointments using the cane to ambulate.

27 Because of this, Plaintiff appears to argue that the ALJ's

28 reliance on the VE's testimony to find a medium RFC with ability

to perform the past relevant work was not supported by substantial evidence.

As to the use of a cane, the Court notes that the evidence that Plaintiff was prescribed a cane consisted of Plaintiff's testimony and evidence from the middle of 2001, submitted after the hearing, indicating a prescription by a past treating physician. (A.R. 235, 204-05, 4, 234-35.) Although the ALJ did not have the benefit of the 2001 cane prescription at the hearing, he addressed the question of the cane in noting that there was no medical evidence that Plaintiff needed a cane. (A.R. 17-18.) Further, in his consideration of Plaintiff's testimony, he noted that Plaintiff was not sure if he could stand and walk without his cane. (A.R. 16.) In considering Dr. Rios's opinion, the ALJ expressly noted that although Plaintiff alleged he used a cane to walk, Dr. Rios had observed that a cane was unnecessary. (A.R. 17.) Dr. Rios concluded that Plaintiff's cane was unnecessary because Plaintiff's overall balance, strength, and equilibrium were intact; he discerned no abnormality in connection with Plaintiff's coordination, station, or gait, and he opined that an assistive device was unnecessary. (A.R. 139-40.)

The ALJ clearly put great weight on the opinions of Dr. Rios and the state agency consultants' opinions because they were consistent with the objective evidence and Dr. Rios's findings on examination, and he just as clearly rejected the opinion of Plaintiff's treating physician as inconsistent with the clinical and x-ray findings. (A.R. 17.)

The Court notes that the record of the 2001 prescription for

a "DCANE" does not indicate that it was based on any x-ray findings; indeed, the physician, whose name is unclear, stated that a lumbar spine x-ray would be part of the treatment. (A.R. 205.) He or she noted Plaintiff's complaint of two days of a flare up of low back pain with radiation, and a finding on examination of tenderness of the low back on the left side, but negative result on straight leg raising; the assessment was low back pain. (A.R. 205.) This evidence does not contain clinical or laboratory findings that would be inconsistent with the ALJ's thorough review and evaluation of the medical evidence. It does not appear possible that the ALJ would have evaluated Plaintiff's functional limitations differently based on the 2001 prescription of a cane, which was based in turn on discredited subjective limitations and only mild clinical findings--the very same bases for opinions that the ALJ rejected expressly in the opinion.

The Court concludes that adequately articulated reasoning and substantial evidence supported the Commissioner's finding that Plaintiff did not need to use a cane to ambulate. Thus, failure to include it in the hypothetical to the VE was not erroneous, and the ALJ's conclusion concerning Plaintiff's ability to perform his past relevant work was supported by substantial evidence.

VII. <u>Disposition</u>

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision

27

1 of the Defendant Commissioner of Social Security and DENIES

2 Plaintiff's Social Security complaint.

3        The Clerk of the Court IS DIRECTED to enter judgment for

4 Defendant Michael J. Astrue, Commissioner of Social Security,

5 and against Plaintiff Daoheuang Khounesavatdy.

6

7 IT IS SO ORDERED.

8 **Dated:    March 6, 2008**                          **/s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28